*UTICA, August, 1829.*

*Jackson v. Wood.*

---

## JACKSON, ex dem. E. C. Genet and others, vs. WOOD.

THIS was an action of ejectment for the recovery of a house and lot in the city of New-York, tried at the New-York circuit in October, 1826, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The lessors of the plaintiff claimed title to a lot in Cherry-Street, adjoining the Franklin bank, under a conveyance from Mary Osgood, the widow and relict of Samuel Osgood, to Martha Brandon Osgood, her daughter, executed in consideration of natural love and affection, bearing date the 31st day of May, 1814. Edmund C. Genet married Martha Brandon Osgood in the summer of 1814, some months previous to the death of her mother. Before his marriage he was informed of the fact of the conveyance of the lot in question by Mrs. Osgood to her daughter, and spoke of it as an inducement to the marriage, observing that owning this pro-

*The lessors of the plaintiff in an action of ejectment are not barred from their action by the production of a record of a verdict and judgment in a suit against the lessors and others as heirs and devisees, in which they plead riens per decent, and on the trial of which issue the question was whether the premises claimed in the action of ejectment and other lands* held by the lessors and their co-defendants in that suit came to such defendants by decent or devise, and were assets in their hands to pay the debts of their ancestor, although the jury on the issue of *riens per decent* found against the defendants : it not appearing from the record that the fact in issue in the action of ejectment was in issue and decided in the former suit.

If a verdict in a former suit will stand, on the assumption that the issue therein was found in favor of the title set up in the second suit, such verdict and the judgment thereon are not *conclusive.*

Nor does it help a defendant in an action of ejectment that the title set up by the lessor was *in dispute* in the former action, if such title came in question only *collaterally,* and if it does not appear that the verdict is necessarily based upon the finding that the lessors had no title. That the jury found against the lessor must appear affirmatively and not rest in *inference.*

To make a record evidence to conclude any matter, it should appear from the record itself, that that matter was in issue ; and evidence cannot be admitted that under such a record any particular matter came in question.

An estoppel cannot be created by parol evidence helping out a record ; to constitute an estoppel by a former judgment, the precise point which is to create the estoppel must have been put in issue and decided, and that it was so put in issue and decided can appear by the record alone.

A record, verdict or judgment is not *conclusive* when offered as *evidence* to prove an issue of fact, and not brought forward by plea as an *estoppel.* The jury in such case may find against the facts so proved, if the other evidence in the case will warrant their so doing.

UTICA,
August, 1829.

Jackson
v.
Wood.

perty there was no apprehension, in case of the marriage taking place, of her becoming a charge to his children by a former marriage. Title to the premises, was shewn in Mrs. Osgood as early as the year 1784, and a continued possession since that time.

The defendant resisted the recovery under a title derived by purchase at a sheriff's sale by virtue of an execution issued on a judgment recovered in this court in January, 1818, in favor of The President and Directors of the Manhattan Company against Walter Franklin Osgood, *Edmund Charles Genet and Martha B. his wife*, Samuel Osgood, an Juliana his wife, Susan K, Osgood, De Witt Clinton and Maria his wife, John L. Norton and Sarah his wife and Hannah Clinton; the said Walter, Martha, Juliana and Susan being charged as heirs and devisees, and the said Maria, Sarah and Hannah as heirs of Maria Osgood, deceased. The record of judgment signed and filled and docketed, an execution in pursuance thereof, and a deed of the premises in question from the sheriff of the city and county of New-York in pursuance of a sale under the execution, to James Sterling, bearing date 16th March, 1818, were produced and read in evidence, and a title deduced to the defendant in possession.

From the record of judgment it appeared that the defendants were sought to be charged as *the heirs and devisees of Mary Osgood*, deceased, on two promissory notes indorsed by her in her life time. Several of the defendants pleaded *riens per decent*, against whom judgment was taken for assets *quando acciderint*. The defendants Walter Franklin Osgood, *Edmund C. Genet and Martha B. his wife*, Samuel Osgood and Juliana his wife and Susan K. Osgood pleaded the general issue and *riens per decent* or devise. The plaintiffs replied, that these defendants had sufficient lands, &c. by descent and devise from Mrs. Osgood to pay and satisfy, &c. The cause was tried and the jury, besides finding for the plaintiffs, on the general issue, found, " that the said Walter, Martha, Juliana and Susan at the time of exhibiting of the bill within mentioned of them the said President and Directors of the Manhattan Company against them, the said Walter Franklin Osgood, Edmund Charles Genet and Martha B. his

wife, Samuel Osgood and Juliana his wife and Susan K. Osgood, who are impleaded as aforesaid, had and each of them had divers lands, tenements, and hereditaments by descent and devise from the said Maria Osgood, deceased, wherewith they could, and might, and ought to have satisfied and paid the said several sums of money in the said declaration of them the said President and Directors of the Manhattan Company within mentioned," and they assessed the damages of the plaintiffs to the amount of $6917 50. On this verdict a judgment was entered against all the defendants for the damages found by the jury, together with the costs of increase, " to be levied of the lands, tenements, and hereditaments which the said Walter Franklin Osgood, Martha B the wife of the said Edmund Charles Genet, Juliana, the wife of the said Samuel Osgood, and Susan K. Osgood, and each of them, at the time of the exhibiting of the said bill of the said The President and Directors of the Manhattan Company, had as well by descent as devise from the said Maria Osgood, deceased ;" and of the lands, &c. which shall hereafter come to the hands of Maria, wife of De Witt Clinton, &c.

The execution commanded the sheriff to cause the damages recovered to be made " of the lands, tenements and hereditaments in his bailiwick which the said Walter Franklin Osgood, Martha B. the wife of the said Edmund Charles Genet, Juliana, the wife of the said Samuel Osgood, and Susan K. Osgood, and each of them, on the third Monday in October, in the year of our Lord 1815, (the day of the exhibiting of the bill of the plaintiffs,) had, as well by descent as devise from the said Maria Osgood deceased ;" and that he should have those monies, &c. The execution was returned by the sheriff " satisfied."

The indebtedness of Mrs. Osgood to the Manhattan Company and to others, at the date of the conveyance, to her daughter, Martha Brandan Osgood, afterwards Mrs Genet, was shewn ; and the last will and testament of Mrs. Osgood, bearing date 27th July, 1814, was read in evidence, by which, after giving sundry legacies and bequests to divers persons, the testatrix devised and bequeathed all the residue of her es-

UTICA,
August, 1829.

Jackson
v.
Wood.

tate, real and personal, to her children, Martha B. Osgood, Juliana Osgood, Walter F. Osgood and Susan K. Osgood.

The plaintiff read in evidence a *remittitur* from the court for the trial of impeachments and the correction of errors, transmitting the transcript of the record in the cause of the Manhattan Company against the heirs and devisees of Mrs. Osgood, which had been removed into that court by writ of error ; together with the order of the court *reversing* the judgment of the supreme court. The order of reversal was entered on the 6th April, 1824.

The defendant then proved the indebtedness of Mrs. Osgood to the Manhattan Company, on the particular notes set forth and described in the record of judgment of that company against her heirs and devisees, at the date of the conveyance of the premises in question to Martha Brandon Osgood.

When the evidence was offered herein before stated, of the knowledge of Edmund C. Genet of the conveyance of the premises in question by Mrs. Osgood to her daughter, Martha Brandon Osgood, previous to his marriage, and of his views in relation to the same, it was objected to by the defendant's counsel ; who insisted that the lessors of the plaintiff were *concluded* by the verdict and judgment in the cause of the Manhattan Company against the heirs and devisees of Mrs. Osgood from denying that the premises in question came to Martha Brandon Osgood by descent from Mrs. Osgood. Upon that occasion, his honor the presiding judge ruled that the bill of exceptions attached to the remittitur read by the plaintiff was not evidence that the same subject matter now in issue was in issue, tried and decided in that suit ; but, inasmuch as it did not appear by the record in that case that the validity of the conveyance to Martha Brandon Osgood, as against creditors, was in issue in that suit, it was competent for the defendant to give parol evidence thereof. To this decision allowing parol evidence, the plaintiff excepted. It was then proved, on the part of the defendant that on the trial of the said cause, the deed from Mrs. Osgood to her daughter, Martha Brandon Osgood, and two other deeds by her executed at the same time to two other of her daughters, viz. Susan K. Osgood and Juliana Osgood, of lots in the

city of New-York, also in consideration of natural love and affection, were given in evidence on the part of the defendants in that suit; that the distinct question before the jury on the trial of that issue was, whether the said conveyances, and especially the conveyances to Martha B. and Susan K. were or were not fraudulent and void as against creditors, and especially the plaintiffs in that suit, creditors of the said Maria Osgood, deceased; and whether the said lots were or were not assets in the hands of the defendants, or some of them, parties to that issue; that evidence was given on both sides touching the matter; that the contest between the parties was whether the solid lots were or were not assets; that the judge who presided on the trial of that cause, in a clear and decided charge, told the jury that the said three several conveyances by the said Maria Osgood to her said three daughters respectively, were fraudulent and void as against the plaintiffs in that suit, creditors of the said Maria Osgood, deceased; and that the premises conveyed to the said Martha B. and Susan K. were, notwithstanding the conveyances, assets of the said Maria Osgood, deceased, in the hands of the said Edmund C. Genet and Martha B. his wife, and the other defendants, parties to that issue, by descent or devise; and that the jury, in conformity to such charge, found a verdict for the plaintiffs in that cause.

After this evidence was given on the part of the defendant in this cause, the presiding judge intimated his opinion that, unless the plaintiff could controvert the same, the verdict in that cause, and the judgment thereon, was conclusive upon the lessors here, as to the validity of the conveyance to Martha Brandon Osgood. The plaintiff's counsel offering no evidence, the judge charged the jury that, if they found the facts to be as they had been testified to them, in relation to the enquiry on the former trial, as to the validity of the conveyance to Martha Brandon Osgood, then the verdict in the former suit, and the judgment thereon, were conclusive upon the lessors of the plaintiff, and a bar to a recovery in this cause. The plaintiff excepted to the charge, and the jury found a verdict for the defendant.

UTICA,         A motion was now made to set aside the verdict. The
August, 1829. cause was argued by

Jackson        *S. P. Staples* and *D. B. Ogden,* for the plaintiffs, and by
v.
Wood.          *W. Slosson,* for the defendant.

*By the Court,* MARCY, J.   It will be necessary, in the first
place, to consider the nature and effect of the judgment ob-
tained by the president and directors of the Manhattan Com-
pany, against the heirs and devisees of Mrs. Osgood.   This
corporation prosecuted Walter Franklin Osgood, Edmund
C. Genet and Martha B. his wife, Samuel Osgood and Ju-
liana his wife, Susan K. Osgood and other defendants, as
heirs and devisees of Maria Osgood, deceased.   All the de-
fendants pleaded *riens per descent.*   To the plea of the de-
fendants, not named above, the plaintiffs took judgment
*quando acciderint;* and to the plea of the above named de-
fendants, they replied that they had lands, &c. by descent
and devise from Mrs. Osgood, at the time of the commence-
ment of the suit.   The issue formed by this replication was
tried by a jury, who found a verdict in favor of the plaintiffs
The finding of the jury, as entered on the record, is, that the
said Walter, Martha, Juliana and Susan, at the time of ex-
hibiting the bill of the plaintiffs against the defendants, had,
and each of them had divers lands tenements and herescita-
ments, by descent and devise from Maria Osgood, deceased,
wherewith they might and should have satisfied and paid the
said several sums of money due the plaintiffs over and above
their costs and charges.   Upon this verdict, the plaintiffs
prayed judgment, &c. *to be levied of the lands, &c. which Wal-
ter F. Osgood, Martha B. the wife of E. C. Genet, Juliana
the wife of Samuel Osgood, and Susan K. Osgood, and each
of them, had, at the time of exhibiting the plaintiffs' bill by de-
cent or devise from Maria Osgood, deceased;* and judgment
was entered according to the prayer of the plaintiffs.

The execution on which the sheriff sold the premises in
question, was pursuant to the judgment.   He was, by that
writ, commanded to raise the amount of the judgment from
the lands, tenements and hereditaments, which Martha B.

wife of E. C. Genet, and the other defendants had by descent or devise from Maria Osgood, deceased. He could sell no other lands than such as they thus held, because the judgment extended only to these ; and if he did in fact sell others, the sale was without authority, and without effect on the title of the owner.

Whether the premises in dispute were or were not lands descended from Mrs. Osgood to her heirs, or were devised by her, is a matter, it is said, which cannot now be drawn in question, because it was distinctly passed on in the former suit, and these premises were found to be such lands. It is insisted that the lessors here having been defendants there, are concluded by the verdict and judgment in that case. After the judgment and proceedings in that suit had been introduced, the circuit judge decided that it was competent for the defendant here to shew, by *parol evidence*, that the validity of the deed of Mrs. Osgood to her daughter, Martha B., under which the plaintiff derives title, was in question in the former suit. Under this decision, evidence was received to shew, that in the former suit the validity of this deed and of two others given by Mrs. O. to two other daughters were in question, and that proof was there given to establish their invalidity ; and that the judge, on the trial of that suit, charged the jury that the evidence proved the deeds to be fraudulent against creditors, and that the jury found a verdict for the plaintiffs.

The defendant in this suit having shown these facts in relation to the former suit, the circuit judge, on the trial in this cause, called on the plaintiff's counsel to contradict them. This they could not, or did not do. The judge then decided that the finding of the jury in the former suit was conclusive against the right of the plaintiffs to the premises in question. The motion now made for a new trial, rests principally upon the alleged error in this decision of the circuit judge.

There is nothing upon the face of the record in the former suit, to shew that the plaintiff in this suit is concluded by it. It only appears from that judgment, and the verdict rendered in that suit, that the lessors of the plaintiff, with the other defendants before named, had lands by devise and descent

from Maria Osgood, that were assets in their hands liable for her debts ; but it does not appear any where on the record, that the premises in question were a part of these lands so descended or devised. If, in truth, these premises were the lands, or any of them which the jury in the former trial found to be such assets, a judgment might, and, it is insisted, should have been so entered as to manifest that fact. (Lilly's Entries, 504.) As the record is now made up, it affords no evidence as to the lands which the jury found to have descended from Mrs. O. to heirs and devisees. It was not necessary, I apprehend, that it should designate the lands, to render the judgment binding on them. There was no more necessity to describe them particularly in the record, to make the judgment a lien on them, than there is to set forth in the record of an ordinary case the defendant's lands in order to have them bound by a judgment against him.

If a purchaser at a sale under this judgment has bought lands that were not devised, or did not descend to the defendants, he has acquired no title ; but if he has bought such lands, he can establish his claim to them, by showing that fact. The defendant having derived title to the premises by a sale under the judgment in favour of the Manhattan Company, stands in the relation of a privy, and the record and judgment in that suit are as available to him as they could be to that company. (4 Com. Rep. 276. Archb. Civil Pl. 400. Co. Litt. 352, a.) It becomes necessary then to inquire what is the effect of this record and judgment, when offered as evidence in this suit. The rule upon this subject, as laid down by Ch. J. De Grey, in the case of the Dutchess of Kingston, (20 State Tr. collected by Howell and others, 538,) has been uniformly acknowledged since its decision as correct, except, perhaps, that part of it which regards the conclusiveness of a judgment when offered as evidence under the general issue. " The judgment of a court of concurrent jurisdiction directly on the point, is, as a plea, a bar and evidence conclusive between the same parties, upon the same matter, directly in question in another court; and a judgment of a court of exclusive jurisdiction is in like manner conclusive between the same parties on the same matter, whether directly in point

or coming collaterally in question for a different purpose; but a judgment is no evidence of a matter which comes collaterally in question merely, whether the court be of concurrent or exclusive jurisdiction: nor is it evidence of a matter incidentally cognizable, nor of a matter to be inferred by argument from the judgment." Where the judgment pleaded or offered in evidence is in the same court, its effect probably is the same as a judgment of a court of concurrent jurisdiction. The party is concluded only as to those facts which appear from the record to have been in issue. Lord Ellenborough says, in *Outram* v. *Morewood*, (3 East, 346,) " A recovery itself in an action of trespass, is only a bar to a future recovery of damages for the same injury; but the estoppel precludes parties and privies from contending to the contrary of *that point* or *matter of fact*, which having been once distinctly put in issue by them or by those to whom they are privy in estate or law, has been, *on such issue joined*, solemnly found against them." " The judgment which is the fruit of the action can only follow the nature of the particular right claimed, or the injury complained of;" and in trespass for damages for an injury to the possession, " it concludes nothing upon the ulterior right of possession, much less of property in the land *(unless a question of that kind be raised by the plea and a traverse thereon ;)* and does not even give him (the plaintiff,) the means of obtaining that possession, for the disturbance of which he has obtained damages." Throughout the whole of his very able and elaborate opinion in this case, Lord Ellenborough is exceedingly careful to limit the conclusiveness of a former judgment to the identical matter put in issue by the pleadings. " A judgment therefore, he says, in each species of action is final only for its own proper purpose and object, and no further." Lord Kenyon ruled, in the case of *Sintzenic* v. *Lucas*, (1 Esp. C. 43,) that in order to make a record evidence to conclude any matter, it should appear that that matter was in issue, and this should appear from the record itself; nor should evidence be admitted that under such a record, a particular matter came in question. This opinion has the sanction of an express decision of this court. (*Manning* v. *Harris*, 2 Johns. R. 24.) In a case in Connecticut, Ch. J. Hosmer in-

timates an opinion that an estoppel cannot be created by parol evidence helping out a record. (*Smith* v. *Sherwood*, 4 Conn. R. 276.) In that case, it is decided that, in order to constitute an estoppel by a former judgment, the precise point which is to create the estoppel should have been put in issue and decided; and that it was so put in issue and decided, should appear from the record alone. The same point has been decided in other cases in that court. (4 Day's R. 274, 431.) From these authorities, and many others which might be cited, if it was a position which needed corroboration, I conclude that if the defendant could have pleaded the former judgment as an estoppel, and had pleaded it with all allowable averments, his plea would not have shewn enough to create a bar to the plaintiffs' recovery; because it would not have appeared from the record that the fact now in issue was in issue in the former suit, and directly decided therein. It cannot be pretended that, as evidence offered under the general issue it can have a greater effect than when properly pleaded.

The precise and only issue in the former suit was, whether the lessors of the plaintiff and the other defendants in that suit had lands, &c. by descent or devise from Maria Osgood, that were assets, to pay her debts. That is not the issue in this suit. The issue here is, whether the lessors have a right to the possession of the house and lot, now known as No. 12, in Cherry street. It is said, and so it certainly appears from the parol evidence, that the lessors' title to that lot was in dispute in the former suit; but it came in question, as it will be perceived, collaterally; and it does not appear that the verdict necessarily stands upon the finding that the lessors had not title to these premises. Mrs. O. had conveyed other lands, which, it was contended, were conveyed, as well as the lot for which this suit is brought, in fraud of her creditors; and were also alleged to be held by the defendants as devesees or heirs, and therefore liable to be taken for the debt of the grantor. If it had been contended in the former suit, as it has been here, that Genet was a bona fide' purchaser for a valuable consideration, by reason of his marriage with the grantee, of the premises, and it has been con-

ceded or adjudged that he was such purchaser, the verdict would not have been different from what it was. Proof that the conveyance by Mrs. O. to her daughter Juliana or Susan was void as against creditors, and that neither of them had alienated to bona fide purchasers for a valuable consideration, or that Mrs. O. died seised of other real estate, would have supported the issue upon the record, and entitled the plaintiffs to the same verdict which was rendered in that case. So far, then, from the fact now in issue, or the fact which it is now proposed to establish by the record and judgment, having been the precise point in issue in the former suit, it was not necessarily involved in that issue, and consequently not necessarily determined by the decision in that case.

It was not pretended at the trial, nor on the argument, that this case is like one of those wherein the parties are precluded from again litigating the same matter which has been once in dispute, and submitted to a jury, whatever might have been their decision upon it. It will be perceived by the judge's charge that the lessors were not held to be precluded because their title had been in dispute, nor even because it had been passed on by the jury, but because it had been in dispute, passed on by the jury, and found, as it is alleged, invalid against the creditors of Mrs. O. It would be revolting to justice and common sense to maintain that the lessors are precluded from shewing any title to the premises, merely because the plaintiffs in the former suit, saw fit to attack that title and bring it into question, when it could be shewn that the attack was probably unsuccessful. It seems to be admitted that, before the lessors are precluded in this suit from shewing title to the premises by reason of what took place in the former suit, the defendant here must make it clear that the jury in that suit decided against the validity of the lessor's title. The issue sent down in this suit to be tried, which was whether the plaintiff had, at the time of instituting this suit, a right to the possession of the premises, was abandoned, as it were, and another one raised on the trial, which was, whether the deed of Mrs. Osgood to one of the lessors of the plaintiff had been found by the jury, on the trial in the for-

mer suit, void as against the claims of the plaintiffs in that suit. How was this substituted issue maintained? Not by the record, because it could not be ascertained, as has been observed, by any part of it, that the title of the lessors was involved in that suit: not by the verdict, for that does not appear to have any reference to the premises now in controversy. But the parol evidence shews that the jury declared the premises to be lands descended to the heirs and devisees of Mrs. O. Is this shewn as a matter of fact or a matter of inference? To me, it appears to be a matter of inference. The plaintiffs in the former suit introduced proof to shew that the premises were lands descended, and the judge charged the jury that the fact was made out; but that the jury did find them to be such lands is an inference, a strong one, I admit, but still an inference, because the verdict, as we have seen, is not inconsistent with, and does not necessarily repel the assumption which the lessors may insist on, that the jury did not find the premises to be such lands. It seems to me to be correct to say, that the title of the lessors to the premises was a collateral fact passed on by the jury in the former suit; and what their determination upon that fact was, is to be inferred, by argument, from the judgment. Upon the authority of the rule established by Ch. J. De Grey, which is based in good sense and upheld by a vast number of adjudications, the decisions upon this title in the former suit, coming, as I conceive it did, collaterally in question, the finding of the jury therein being a matter of inference, is not conclusive upon the plaintiff here. It is to be borne in mind that it is not the precise adjudication in the former suit that is offered to conclude the plaintiff's right here, but one of the alleged grounds of that adjudication. Although the adjudication is certain, the grounds are not so; and it is well observed by Starkie, (Treatise on Ev. 1st vol. 202) "that a particular ground can never be inferred and relied upon, especially where its effect is to be conclusive." To ascertain that any thing was determined in the former suit touching the issue here, that decision must be decomposed, and the materials of which it is made, proved by parol evidence; and even after this is done, we are still without cer-

tainty that the matter now in dispute is a part of these mate-    UTICA,
rials. We can only infer that it was, and this inference is  August, 1829.
founded upon the sufficiency of the proof and the direction    Jackson
of the judge to the jury so to consider it, to have made it one    v.
of the grounds. But what is the sufficiency of that proof, if    Wood.
the position now contended for by the plaintiff is to be sus-
tained, that Genet is a *bona fide* purchaser for a valuable con-
sideration, by reason of his marriage with Martha B. Osgood?
The character of the inference does not vary the application
of the principle of law. Whether it be certain or dubious,
it is equally inconclusive upon the plaintiff's rights.

To make the judgment in the former suit conclusive against
the title of the plaintiff here, would be, in my opinion, not
only against the principle which declares that the parties are
not concluded by what has been collaterally decided in a
former suit, but against that which denies conclusiveness to
any thing that is a matter of inference from the former judg-
ment. The case of *Ryer* v. *Atwater & Wright*, (4 Day's
Rep. 431,) contains an adjudication in confirmation of the
principles before stated. The plaintiff in that case prosecu-
ted the defendants for an assult and battery. They plead-
ed the general issue, and on the trial stated, as matter of jus-
tification, insulting language and the destruction of the prop-
erty of one of the defendants by the plaintiff. They offered
to prove the destruction of the property by the verdict against
the plaintiff at the suit of one of the defendants for the prop-
erty destroyed, and it was declared inadmissible. This de-
cision was sustained by the supreme court of errors of Con-
necticut, on the ground that the same points were not in is-
sue in the two suits. Swift, J. observes, that "It is true there
is one fact which is the same in both; that is, the destruc-
tion of the property. When there are several distinct facts
which constitute the *points* contested between the parties, no
authority can be found that will warrant the admission of a
verdict as evidence to prove one of several facts put in issue.
*This distinction is founded in reason ; for where the facts are
different, the same points cannot be in issue.*" For a much
stronger reason, a verdict, resting on several facts coming
collaterally in issue, should not be received as conclusive in

a suit involving in its issue one of these collateral facts. If, from the situation of the lessors in the former suit, they were deprived of any of the usual means of establishing their title; or of correcting the errors of the judge or jury in relation to it, they ought not to be concluded by the judgment in that suit. This, I apprehend, was their situation. Suppose the jury in the former suit had found, contrary to the weight of evidence, that Genet had no title to the premises; could he have corrected that error? If he had moved to set aside the verdict, he would have failed; for the verdict would have rested upon the evidence given as to the two other lots. To resist the motion successfully, it would have been sufficient to say that it appears satisfactorily that the deeds of Mrs. O. to her daughters Juliana and Susan, were void against the plaintiffs as creditors; and there is no proof that either of the lots conveyed to them had been alienated to bona fide purchasers for a valuable consideration. The defendants, Juliana and Susan, therefore, took these lots as heirs and devisees of Mrs. O.; and this is the verdict of the jury. If the judge had erred, as it is now insisted he did on the former trial, in instructing the jury that Genet had no valid title to the premises as against the creditors of Mrs. O., could the lessors have relieved themselves, in that suit, from the consequences of this misdirection? The answer which would probably have been given on the application for a new trial, and which might have been received by the court, would have been, that the verdict was sustained by the evidence in relation to the lots conveyed to Susan K. and Juliana Osgood; and if a new trial was granted for the purpose of correcting the error of the judge in relation to Genet's title to the premises, and it was corrected, the verdict would be the same. A new trial would therefore be a useless and expensive ceremony. (3 Johns. Rep. 526. 10 id. 447.)

There is another ground of objection to the judge's charge in this case; which is, that no record, judgment or verdict can be conclusive when offered as *evidence* to prove an issue of fact. It is said to be but evidence, and must go to the jury with all the other evidence offered by the parties to prove the issue joined; and the jury may find their verdict against the facts proved by

such judgment, record or verdict. The jury are bound by estoppel, unless the party leaves the fact at large by the pleadings. If it is so left, the jury may find against what, if pleaded as an estoppel, would be conclusive. (1 Salk. 276.) In the case of *Outram* v. *Morewood*, before cited, Lord Ellenborough says, " The plea would be conclusive that at the time of pleading the plea, the soil and freehold were in the defendant ; and if properly pleaded by way of estoppel, it would estop the plaintiff, against whom it was found, from again alleging the contrary. *But if not brought forward by plea as an estoppel, but only offered in evidence, it would be material evidence indeed, that the right of freehold was at the time as found, but not conclusive between the parties as an estoppel would be.*" In the case of *Vought* v. *Winch*. (2 Barn & Ald. 662,) it was decided by the King's bench that a former judgment, which if pleaded would be a bar, is not conclusive when offered in evidence under the general issue ; and that a second jury may decide against the verdict of the first. Holroyd, J. says, that " when the evidence of a former judgment is offered under the general issue, the jury are to try, not whether there was a former action for the same cause, but whether the plaintiff has such a ground of action as he has alleged in his present declaration. When it is put to the jury to find what the fact was, it is inconsistent with the issue joined, for the defendant to say that the jury are estopped from going into the inquiry." It is to be observed, that in these cases the defendants might have pleaded what they offered as evidence ; but in the present case, the usual course of pleading did not allow the defendant to present by a plea what he offered in evidence as conclusive ; but it does not seem very reasonable that this circumstance should vary the effect of the evidence when offered under the general issue.

There is some diversity of opinion as to the soundness of the distinction taken in these cases ; and we are not called on in this case expressly to adopt or reject it, because the other objections to the charge dispose of this motion for a new trial.

I consider the law as settled, that the reversal of the judgment under which the defendant holds the premises subse-

UTICA,
August, 1829.
V. Steenbergh
v.
Bigelow.

quent to the sale, does not impair his title required by that sale. (Manning's case, 8 Co. 191. *Woodcock* v. *Bennet*, 1 Cowen, 734.)

I think the circuit judge erred in deciding that the judgment and proceedings in the cause of the President and Directors of the Manhattan Company against the heirs and devisees of Mrs. Osgood were conclusive upon the rights of the plaintiff in this suit, and that there ought therefore to be a new trial.